IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

No. 25-1821

MICHAEL WILEY, Appellee,

v.

PATRICK LEE OLSON, Appellant.

**BRIEF OF APPELLEE**

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:24-cv-02237-JFM)
(Honorable J.F. Murphy, District Judge)

Phillip D. Berger, Esq.
I.D. No. 58942
Matthew R. Kaufmann, Esq.
I.D. No. 206991
Berger Law Group, P.C.
919 Conestoga Avenue
Building 3, Suite 114
Rosemont, PA  19010
Phone:  (610) 668-0800
*Attorneys for Plaintiff/Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

CORPORATE DISCLOSURE STATEMENT AND STATEMENT OF
FINANCIAL INTEREST ........................................................................ v

I.  COUNTERSTATEMENT OF ISSUES PRESENTED ....................... 1

II.  COUNTERSTATEMENT OF THE CASE ......................................... 1

    A.  Procedural History .................................................................. 2

    B.  Nature of the Dispute .............................................................. 3

III.  COUNTERSTATEMENT OF FACTS ............................................... 4

    A.  The Fraudulent CSS Deal ....................................................... 4

    B.  Discovery of the Fraud ............................................................ 5

    C.  The Parties' Bankruptcies ....................................................... 6

    D.  Key Factual Findings .............................................................. 6

IV.  SUMMARY OF THE ARGUMENT ................................................. 7

V.  STANDARD OF REVIEW ................................................................ 9

VI.  ARGUMENT ................................................................................... 10

    A.  The District Court Correctly Affirmed The Bankruptcy
Court's Determination That The Premium Payment Is
Nondischargeable Under § 523(a)(2)(A) Based On Binding
Supreme Court Precedent ...................................................... 10

i

B.  The District Court Properly Affirmed The Bankruptcy Court's Discretionary Determination Not To Apply Judicial Estoppel .................................................................... 22

VII.  CONCLUSION ................................................................ 27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION ...................................................................... 29

CERTIFICATE OF BAR MEMBERSHIP .............................. 29

CERTIFICATION OF COMPLIANCE – PUBLIC ACCESS ................. 30

# TABLE OF AUTHORITIES

**Cases**

*Bartenwerfer v. Buckley*, 598 U.S. 69 (2023) ...............................................7, 12

*Cohen v. de la Cruz*, 523 U.S. 213 (1998)................................................ passim

*Elliott v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 747 (Bankr. W.D. Pa. 2008)....................................................................................................17

*Field v. Mans*, 516 U.S. 59, 74-75 (1995) ...................................19, 20, 21

*Grogan v. Garner*, 498 U.S. 279, 287-88, 111 S. Ct. 654, 659-60, 112 L. Ed. 2d 755 (1991) ...................................................................... 10, 12, 18

*In re Bocchino*, 794 F.3d 376, 379 (3d Cir. 2015) ...................................9, 10, 13

*In re Fegeley*, 118 F.3d 979, 982 (3d Cir. 1997)....................................................9

*In re Kane,* 628 F.3d 631, 638 (3d Cir. 2010) .....................................22, 24, 26

*Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995) ........10

*Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994).............22

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001)................................................................... 10, 23, 24, 26

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).......................................23

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996)..................................................................................25

*Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 147 (Bankr. E.D. Pa. 2008).........16

**Statutes**

U.S.C. § 523(a)(2)(A) ............................................................ passim

## CORPORATE DISCLOSURE STATEMENT AND STATEMENT
## OF FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 26.1, Appellee Michael Wiley makes the following disclosure:

1) For non-governmental corporate parties, please list all parent corporations:

None.

2) For non-governmental corporate parties, please list all publicly held companies that own 10% or more of the party's stock:

None.

3) If there is a publicly held corporation which is not a party to the proceeding before this Court, all such parties and specify the Court but which has a financial interest in then outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests.

None.

4) In all bankruptcy appeals, counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified by the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and 3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating, this information must be provided by the appellant.

This is a bankruptcy appeal, and the debtor's name is identified in the case caption. There is no creditor's committee as this was a no-asset Chapter 7 case. The trustee is not participating in this appeal.

# I. COUNTERSTATEMENT OF ISSUES PRESENTED

1. Whether the District Court correctly affirmed the Bankruptcy Court's determination that a $2,426,000 premium payment is nondischargeable under 11 U.S.C. § 523(a)(2)(A) as the debt arose from fraud committed by the Debtor, consistent with the Supreme Court's holding in *Cohen v. de la Cruz*, 523 U.S. 213 (1998)?

**Suggested Answer**: Yes.

2. Whether the District Court properly affirmed the Bankruptcy Court's discretionary determination not to apply judicial estoppel, as Appellee's valuation of his business interest at $1.00 in his prior Chapter 7 bankruptcy was not inconsistent with Appellee subsequently pursuing this nondischargeability action?

**Suggested Answer**: Yes.

# II. COUNTERSTATEMENT OF THE CASE

This appeal arises from Appellant/Debtor Patrick Lee Olson's attempt to discharge debt resulting from Mr. Olson's criminal forgery and fraud. Appellant Olson obtained $577,000 from Appellee Michael Wiley (and his company) by forging and issuing a bogus contract. Then to delay Appellee Wiley from demanding repayment and to prevent Appellee Wiley from investigating and

discovering Olson's fraud, Appellant Olson then contractually offered and agreed to repay the $577,000 plus $2,426,000 in the anticipated profits from his alleged (fictitious) transaction. Both lower courts correctly held that both of these debts were nondischargeable due to Appellant Olson's fraudulent conduct under well-established Supreme Court precedent.

## A. Procedural History

On June 15, 2022, Appellant Olson filed a petition under Chapter 7 of the Bankruptcy Code. (A59). On July 5, 2022, Appellee Wiley commenced an adversary proceeding seeking a determination that a $3,678,122.58 default judgment (the "Judgment") was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). (A71-A93).

Following a bench trial on August 8, 2023, the Bankruptcy Court issued its Opinion and Order on May 10, 2024. (A25-A58). The Bankruptcy Court found that $3,003,000 of the default judgment ("nondischargeable Judgment Amount") entered against Appellant Olson—comprising repayment of the $577,000 in fraudulently obtained funds plus the $2,426,000 in the promised premium payment from expected profits, offered by Olson so as to prevent Appellee Wiley from

uncovering the fraud earlier and then exercising his rights—was nondischargeable under § 523(a)(2)(A). (A57-A58).

Appellant Olson appealed to the District Court on May 24, 2024. (A23-A24). The District Court affirmed the Bankruptcy Court's decision in a comprehensive Opinion on March 28, 2025. (A5-A18). This appeal by Appellant Olson followed. (A1-A4).

## B. Nature of the Dispute

Appellant challenges two discrete aspects of the lower courts' rulings:

1.      The determination that the $2,426,000 offered premium payment by Appellant Olson is nondischargeable under § 523(a)(2)(A); and

2.      The refusal to apply judicial estoppel based on the $1.00 valuation of Appellee Wiley's defunct company made in Mr. Wiley's prior Chapter 7 bankruptcy filing (which bankruptcy was caused due to the damages caused by Appellant Olson's fraud).

Notably, Appellant Olson does not contest that he committed fraud, nor that the $577,000 obtained through fraud is nondischargeable. (Appellant's Br.).

## III. COUNTERSTATEMENT OF FACTS

The undisputed facts establish a straightforward case of fraud. Appellant Olson and Appellee Wiley were business partners in technical procurement deals. Through his company McGrath Technical Staffing ("McGrath Technical"), Appellee Wiley obtained and provided capital funding for Appellant Olson to acquire and supply data storage equipment to clients.

### A. The Fraudulent CSS Deal

In 2017, Appellant Olson approached Appellee Wiley about a purported deal Olson had with Common Securitization Solutions, LLC ("CSS") and which allegedly required $577,000 in funding. (A26-A29). When Appellee Wiley's lender, Centric Bank required a signed contract to release $577,000.00 of funds, Appellant Olson presented a contract bearing his signature, and allegedly the signature of CSS's Chief Operating Officer, Adam Newman. (A30-A31). Based on this document, the sum of $577,000 was then advanced to Appellant Olson's company, Idea IT Solutions, LLC (hereinafter "Idea IT LLC"). (A26-A31).

When the fictitious deal failed to close as promised, Appellant's company, Idea IT, LLC executed a promissory note in April 2018, and Appellant Olson signed the note as personal guarantor. (A148-A152, A216-A218; A305-A308).

This note included both the principal amount of $1,261,000 (covering various payments still outstanding plus the funds provided for the CSS project) and a "Premium Payment" of $2,426,000. (A305-A308). This Premium Payment represented the profits Mr. Wiley and his company McGrath Technical were promised from the CSS deal. (A149; A309).

## B. Discovery of the Fraud

However, the CSS deal was totally fraudulent and was a fictitious transaction concocted by Appellant Olson. Appellant Olson intentionally forged the CSS officer's signature on the contract, and Mr. Olson then represented that the agreement (for this fictitious transaction) was signed by CSS. Appellant Olson's fraud was discovered through bank records, which led to Ms. Olson's criminal conviction for forgery in Pennsylvania state court in February 2022. (A153-A159, A198-A201; A310). The Bankruptcy Court found that Appellant "forged the CSS Contract because he 'wanted to keep [the CSS Deal] moving while [he] was trying to do other things.'" (A9; citing Trial Tr. at 77).

When Idea IT, with Appellant Olson as guarantor, defaulted on the promissory note, McGrath Technical obtained a default judgment of

$3,678,122.58. (A8; A311-A326).  The Judgment was subsequently assigned by McGrath Technical to Mr. Wiley.

### C. The Parties' Bankruptcies

Following bankruptcy filings by both parties, Appellee Wiley initiated this adversary proceeding to except the entered Judgment from discharge in Appellant Olson's bankruptcy proceeding, based on fraud. The Bankruptcy Court, after a full trial, found that both the $577,000 repayment amount plus the $2,426,000 promised Premium Payment were nondischargeable under § 523(a)(2)(A). (A25-A58).

### D. Key Factual Findings

The Bankruptcy Court made specific factual findings, which neither the District Court nor Appellant Olson has challenged on appeal:

1.      The Premium Payment represented the profit McGrath Technical expected from the CSS deal. (A17; Trial Tr. at 33-34).

2.      Appellee Wiley would never have calculated or booked these anticipated profits had he known the CSS deal was fictitious. (A17).

3. The promissory note (guaranteed by Appellant Olson) containing the Premium Payment was executed specifically because the fraudulent CSS deal was delayed. (A17).

4. Appellee Wiley suffered actual damages far exceeding even the Premium Payment, losing "his home, business, and livelihood in part because the expected profits from the CSS deal never materialized." (A17).

## IV. SUMMARY OF THE ARGUMENT

The District Court correctly affirmed the Bankruptcy Court's well-reasoned decision on both issues presented in this appeal.

**First**, the Premium Payment is nondischargeable under § 523(a)(2)(A) based on the Supreme Court's controlling decision in *Cohen v. de la Cruz*, 523 U.S. 213 (1998). *Cohen* unequivocally holds that once fraud is established, "any debt" arising from that fraud is excepted from discharge, including amounts exceeding the value initially obtained. As the Supreme Court stated: "Once it is established that specific money or property has been obtained by fraud... 'any debt' arising therefrom is excepted from discharge." *Id.* at 218. The Supreme Court recently reaffirmed this principle in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), emphasizing that the Bankruptcy Code "strikes a balance" between granting honest

7

individual debtors a "fresh start by discharging their debts", and competing

interests, including in protecting creditors against a debtor's fraudulent behavior.

The Premium Payment directly arose from Appellant's fraud: it represented

anticipated profits from the fraudulent CSS deal presented by Appellant Olson and

relied upon by Appellee Wiley, was calculated based on Appellant Olson's

fraudulent representations, was specifically included in the promissory note

because the fraudulent deal was allegedly delayed, and was to delay and prevent

Mr. Wiley from exercising his rights and remedies. Appellant Olson's attempt to

limit *Cohen* to only statutory punitive damages contradicts both the Supreme

Court's broad language, and the subsequent federal court applications.

**Second**, the Bankruptcy Court properly exercised its discretion in declining

to apply judicial estoppel. Valuation and dischargeability address fundamentally

different legal questions. As courts recognize, acknowledging that a debt exists and

its amount (valuation), is entirely consistent with arguing that the debt should not

be discharged due to § 523's statutory exceptions.

Appellee Wiley's valuation of his company McGrath Technical at $1.00 (in

Mr. Wiley's Chapter 7 bankruptcy), reflected McGrath Technical's negative net

worth ($5.9 million in liabilities against minimal assets) and the perceived

uncollectibility of the Judgment. This valuation is not "irreconcilably inconsistent", as Appellee Wiley valuation of McGrath Technical and subsequent efforts to prevent the Judgment from being discharged in Appellant Olson's bankruptcy are separate legal questions. Moreover, Appellee Wiley acted transparently throughout all of the bankruptcy proceedings, and there is absolutely no evidence that Appellee Wiley committed any bad faith, which is a required element for judicial estoppel.

This Court should affirm the thoughtful decisions of both the Bankruptcy Judge and the District Court, which properly applied the controlling law to prevent a convicted fraudster from escaping the full consequences of his criminal conduct through a bankruptcy filing.

## V.    STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's legal conclusions de novo and its factual findings for clear error. *In re Bocchino*, 794 F.3d 376, 379 (3d Cir. 2015); *In re Fegeley*, 118 F.3d 979, 982 (3d Cir. 1997). The burden of proving that a debt is not dischargeable under § 523(a) is upon the creditor, who must establish an exception to dischargeability by a preponderance of the evidence. *Grogan v.*

*Garner*, 498 U.S. 279, 287-88, 111 S. Ct. 654, 659-60, 112 L. Ed. 2d 755 (1991); *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995).

The Bankruptcy Court's application of judicial estoppel is reviewed for abuse of discretion. *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010). A court abuses its discretion when its ruling is "founded on an error of law or a misapplication of law to the facts." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001). This Court reviews the Bankruptcy Court's factual findings for clear error and exercises plenary review over any legal conclusions. *In re Bocchino*, 794 F.3d 376, 379 (3d Cir. 2015).

## VI.  ARGUMENT

### A. The District Court Correctly Affirmed The Bankruptcy Court's Determination That The Premium Payment Is Nondischargeable Under § 523(a)(2)(A) Based On Binding Supreme Court Precedent

The Premium Payment of $2,426,000 is nondischargeable as a debt arising from Appellant Olson's fraud. This conclusion follows directly from the Supreme Court's controlling decision in *Cohen v. de la Cruz*, which decision Appellant Olson's brief fundamentally mischaracterizes.  As the Supreme Court recognized, "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of

affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz*,

523 U.S. 213, 217 (1998).

### 1. Cohen v. de la Cruz Controls This Case

In *Cohen v. de la Cruz*, 523 U.S. 213 (1998), the Supreme Court definitively

resolved the precise issue before this Court. The Court held that § 523(a)(2)(A)

"prevents discharge of 'any debt' … that the debtor has fraudulently obtained,

including treble damages" and attorney's fees, and other relief that may "exceed[]

the value obtained by the debtor." *Id.* at 223.

The *Cohen* Court conducted an exhaustive analysis of § 523(a)(2)(A),

examining its text, structure, legislative history, and underlying policies. The

Court's holding was unequivocal:

> Once it is established that specific money or property has been obtained by
> fraud, ... 'any debt' arising therefrom is excepted from discharge.

*Id.* at 218.

The Court specifically rejected the argument Appellant Olson advances

here—that § 523(a)(2)(A) should be limited only to the actual damages obtained

through fraud. The Court reasoned that limiting the exception would "leave

creditors short of being made whole whenever the loss to the creditor from the

fraud exceeds the value obtained by the debtor." *Id*. at 223. The Court further explained:

> [I]t is unlikely that Congress ... would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud.

*Id.* at 223 (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

Importantly, the Supreme Court emphasized that "any debt" for "money, property", etc., that is "fraudulently obtained, including treble damages", attorney's fees, and other relief "that may exceed[] the value obtained by the debtor" is nondischargeable. *Cohen*, 523 U.S. at 223.

The Supreme Court recently reaffirmed these principles in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), holding that § 523(a)(2)(A) bars discharge of debts "obtained by" fraud without requiring the debtor to have personally committed the fraud. The Court emphasized that "Written in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it." *Id.* at 73. The Court emphasized that Congress intended broad protection for fraud victims, consistent with limiting the fresh start to "honest" but unfortunate debtors. *Id.* at 77.

This Third Circuit has applied these principles broadly. In *In re Bocchino*, 794 F.3d 376, 384 (3d Cir. 2015), this Court held that even gross recklessness can satisfy the scienter requirement for § 523(a)(2)(A), emphasizing this "accords with the overall policy goal of the Bankruptcy Act—to limit the opportunity of a fresh start to the 'honest but unfortunate debtor.'"

### 2. The Premium Payment Directly Arises From Appellant's Fraud

The factual record conclusively establishes that the Premium Payment arose from Appellant Olson's fraud. The Bankruptcy Court made specific factual findings, which neither the District Court nor Appellant Olson challenges on appeal:

**First**, the Premium Payment represented profits McGrath Technical expected from the CSS deal. (A8; A17; Trial Tr. at 33-34). This was not a penalty imposed by a court, but rather the parties' own contractual acknowledgment of the value McGrath Technical was to have received from the transaction presented by Appellant Olson, and promised by Appellant Olson so as to delay and/or prevent McGrath Technical and Appellee Wiley from uncovering the fraud earlier, and then exercising their rights and remedies.

**Second**, the Bankruptcy Court credited Appellee Wiley 's testimony that he would never have calculated or booked these anticipated profits had he known the CSS deal was fictitious. (A47). This credibility determination, reviewed only for clear error, directly links the Premium Payment to Appellant Olson's fraudulent misrepresentations.

**Third**, the promissory note with Olson's guaranty, which contained the Premium Payment, was executed specifically because the fraudulent CSS deal was delayed. (A6-A8, A30-A33). The delay occurred because the deal was entirely fabricated, and Appellant Olson was also seeking to delay or prevent Mr. Wiley from uncovering the fraud. Thus, the Premium Payment exists only because of Appellant Olson's continuing fraud.

**Fourth**, Appellee Wiley suffered actual damages far exceeding even the Premium Payment. The District Court found that "Mr. Wiley lost his home, business, and livelihood in part because the expected profits from the CSS deal never materialized." (A17). As the Supreme Court recognized in *Cohen*, the fraud exception serves to make creditors whole, not to provide fraudsters with a windfall. 523 U.S. at 223. As this Court recognized in *Cohen*, "Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising

therefrom is excepted from discharge." *Cohen v. De La Cruz*, 523 U.S. 213, 214, 118 S. Ct. 1212, 1214 (1998).

The Supreme Court in *Cohen* explicitly contemplated consequential damages scenarios, noting that if a debtor commits fraud causing a "multi-million dollar airplane to crash" from fraudulently representing $5,000 in bolts as aircraft quality, limiting nondischargeability to the value obtained "would allow the debtor in those situations to discharge any liability for losses caused by his fraud." *Cohen*, 523 U.S. at 222. Here, as in *Cohen*'s airplane hypothetical, the Premium Payment represents the natural and proximate consequences of Appellant Olson's fraud which prevented Mr. Wiley from uncovering the fraud earlier, and delayed him in exercising his rights and remedies which may have resulted in a recovery, rather than experiencing his own Chapter 7 filing with the loss of his home, his business, and his livelihood.

### 3. Appellant's Attempt To Limit The Cohen Holding To Statutory Punitive Damages Contradicts Supreme Court Precedent

Appellant Olson attempts to reframe the issue by characterizing the Premium Payment as improper "punitive damages" that the Bankruptcy Court somehow imposed without authority. (Appellant's Br.). Appellant Olson's characterization fails on multiple levels.

**First**, the Premium Payment was <u>not</u> imposed by any court!  The Premium

Payment was a contractual term agreed to by Appellant Olson and his company

Idea IT when executing the promissory note in April 2018. Through this

agreement, Appellant Olson (a) acknowledged that McGrath Technical was entitled

to these anticipated profits; and (b) used that promised profit payment to prevent

and/or delay McGrath Technical and Mr. Wiley from discovering the fraud then

and exercising their rights at that time.

**Second**, even if the Premium Payment could be characterized as punitive in

nature, *Cohen* explicitly holds that such damages are nondischargeable when

arising from fraud. The *Cohen* Court itself dealt with treble damages—

unquestionably punitive in nature—and held them nondischargeable. 523 U.S. at

219.  The Court stated: "The text of § 523(a)(2)(A), the meaning of parallel

provisions in the statute, the historical pedigree of the fraud exception, and the

general policy underlying the exceptions to discharge all support our conclusion

that 'any debt'... encompasses any liability arising from money, property, etc., that

is fraudulently obtained." *Id.* at 223.

As the Bankruptcy Court for the Eastern District of Pennsylvania recognized

in *Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 147 (Bankr. E.D. Pa. 2008),

"When the awards of compensatory damages and punitive damages are based upon the same conduct, the punitive damages award will be nondischargeable under § 523(a)(6) if the compensatory damages award is found to be nondischargeable." This principle applies with equal force to § 523(a)(2)(A), as fraudulent conduct often satisfies multiple nondischargeability provisions simultaneously, reflecting Congress's intent to ensure that fraud victims receive comprehensive protection regardless of the specific subsection invoked.

**Third**, federal courts have consistently applied *Cohen* to various forms of consequential damages beyond actual out-of-pocket losses. *See, e.g., Elliott v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 747 (Bankr. W.D. Pa. 2008) (finding that "all liability, including punitive damages, associated with a nondischargeable debt for fraud has been held to be nondischargeable where the underlying debt is nondischargeable"); *In re Auricchio*, 196 B.R. 279, 284 (Bankr. D.N.J. 1996) (applying *Cohen* broadly to consequential damages).

Appellant Olson's narrow reading of *Cohen* as limited to statutory punitive damages finds no support in the Supreme Court's opinion. The Court repeatedly emphasized the broad scope of nondischargeable debt:

> [A]ny debt ... for money, property, services, or ... credit, to the extent obtained by fraud encompasses any liability arising from money, property,

etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

*Cohen*, 523 U.S. at 223 (emphasis added).

"Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge." *Cohen*, 523 U.S. at 218-19. This "arising from" language encompasses both direct and consequential damages flowing from Appellant Olson's fraudulent conduct.

The District Court properly recognized that limiting § 523(a)(2)(A) to out-of-pocket losses would produce the perverse result *Cohen* sought to avoid: allowing fraudsters to profit by discharging the very damages their fraud caused. Here, Appellant Olson seeks to discharge $2,426,000 in alleged and represented profits his fraud prevented Appellee Wiley from realizing or pursuing, while avoiding responsibility for the financial devastation Mr. Olson's criminal conduct caused Mr. Wiley and his business McGrath Technical to incur.

As the Supreme Court stated in *Grogan v. Garner*, 498 U.S. 279, 287 (1991), "It is unlikely that Congress would have fashioned a proof standard that favored an interest in giving the perpetrators of fraud a fresh start over an interest in protecting the victims of fraud." This principle applies with full force here, where Appellant Olson's criminal fraud directly caused Appellee Wiley to lose

anticipated profits that both parties acknowledged through the Premium Payment provision, and was further intended to prevent or delay the uncovering of Appellant Olson's criminal fraud.

As the Supreme Court stated in *Cohen*, 523 U.S. 213, 217 (1998), "the Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'"

    **4.** Appellant Olson's Justifiable Reliance Argument Fails As A Matter Of Law

Appellant Olson's attempt to defeat the fraud exception by pointing to a temporal gap between the forged contract and the promissory note, just fundamentally misconstrues the justifiable reliance standard. *Field v. Mans* holds that "§ 523(a)(2)(A) requires justifiable, but not reasonable, reliance." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). *Field v. Mans* expressly rejected imposing a duty to investigate, holding that a creditor may justifiably rely on representations even when they could have "walked across the street to the office of the register of deeds" to discover the truth. 516 U.S. at 70-71.

The six-month period between the forged CSS contract and the April 2018 promissory note with guaranty does not defeat Mr. Wiley's justifiable reliance for several critical reasons:

First, *Field*'s justifiable reliance standard is intentionally permissive. The Supreme Court emphasized that "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id.* at 70 (quoting Restatement (Second) of Torts § 540). Appellant Olson cannot escape liability by arguing that Mr. Wiley should have investigated whether Olson's represented CSS transaction was fraudulent, and whether the CSS contract contained a signature forged by Olson during that six-month period.

Second, the promissory note and premium payment arose directly from Appellant Olson's continuing fraud. The Bankruptcy Court found that the premium payment represented profits Mr. Wiley expected from the CSS deal (A9), and that the note was executed "specifically because the fraudulent CSS deal was delayed" (A8-9). Critically, the fraud was ongoing—Appellant Olson never disclosed the forgery during the intervening months, allowing Mr. Wiley to continue believing that the deal would close. This continuing concealment by Appellant Olson connects the original fraud to the later promissory note with guaranty.

20

Third, Appellant's "separate transaction" argument ignores that both the initial funding and the subsequent note were part of a single fraudulent scheme. The Bankruptcy Court found that Appellant Olson forged the contract because he "wanted to keep [the CSS Deal] moving" (A9, A33). The premium payment was not a new, independent obligation but rather the direct consequence of Appellant Olson's fraud causing delays in what Mr. Wiley justifiably believed was a legitimate business transaction.

Fourth, under *Field* and *Cohen*, creditors have no duty to investigate potential fraud. Once fraud is established, ALL resulting liability is nondischargeable. The Supreme Court in *Cohen* specifically noted that limiting nondischargeability would "leave creditors short of being made whole whenever the loss to the creditor from the fraud exceeds the value obtained by the debtor." 523 U.S. at 223.

In this matter, Appellee Wiley's losses—including lost profits represented by the premium payment—arose directly from Appellant Olson's fraud. That these losses were formalized in a later document setting forth the represented profits does not sever the causal connection. As this Court recognized in *In re Cohen*, 106 F.3d at 57, the relevant inquiry is whether the debt "resulted from" the fraud, not whether every element of damages was contemporaneous with the fraudulent act.

Finally, Appellant's reliance argument ignores the continuing nature of his fraud. As recognized in *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994), fraudulent concealment requires "some trick or contrivance intended to exclude suspicion and prevent injury." In this matter, Appellant Olson's failure to disclose the forgery during the six months between his initial fraud, and the execution and turnover of the promissory note constitutes the continuing concealment that prevented Mr. Wiley from discovering the truth of this bogus transaction.

## B. The District Court Properly Affirmed The Bankruptcy Court's Discretionary Determination Not To Apply Judicial Estoppel

Appellant's judicial estoppel argument reflects a fundamental misunderstanding of both the judicial estoppel doctrine's requirements, and the distinction between valuation and dischargeability. The District Court correctly affirmed the Bankruptcy Court's discretionary decision to reject Appellant Olson's defense. As the Court emphasized in *In re Kane*, "Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion… [A] given set of circumstances does not…necessarily compel its application." *In re Kane,* 628 F.3d 631, 638 (3d Cir. 2010).

### 1. Appellee's Positions Were Not Irreconcilably Inconsistent

Judicial estoppel requires "irreconcilably inconsistent" positions. *Montrose Med. Grp.*, 243 F.3d at 779-80. As this Court explained in *Montrose*, "the party to be estopped must have taken two positions that are irreconcilably inconsistent." *Id.* at 779. The Court further held that "A party has not displayed bad faith for judicial estoppel purposes if its initial claim was never accepted or adopted by a court or agency." *Id.* at 783. The Supreme Court has emphasized that positions must be "clearly inconsistent" for judicial estoppel to apply. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Appellee Wiley's positions—valuing his interest in McGrath Technical at $1.00 in his forced Chapter 7 bankruptcy, then subsequently pursuing the nondischargeability of the Judgment in Appellant Olson's bankruptcy—address entirely different questions, arising at entirely different times, and under entirely different legal standards.

**Valuation,** for bankruptcy scheduling, requires the assessment of the present net worth of an entity, being assets minus liabilities. This determination occurs at a specific moment in time based on the then-existing financial conditions.

**Dischargeability** determinations under § 523(a)(2)(A) require examining whether a debt arose from fraud; a legal characterization that exists independent from whether the debt is collectable.

As the District Court correctly observed: "valuation and dischargeability present separate questions—it is not inherently inconsistent for Mr. Wiley to move to except the default judgment from discharge even if he doubts its actual value or collectability." (A12).

This Court's decision in *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010), supports this applied distinction. While "a debtor's disclosure obligation extends to 'contingent assets,'" practical considerations also directly affect valuation. When Mr. Wiley's Chapter 7 bankruptcy was filed, McGrath Technical had $5.9 million in liabilities with minimal assets. Even with the Judgment (whose collectability is highly doubtful) considered, McGrath Technical had a negative valuation.

### 2. Appellee Did Not Act in Bad Faith

As *Montrose* established, "judicial estoppel is unwarranted unless the party changed his or her position in bad faith—i.e., with intent to play fast and loose with the court." 243 F.3d at 779. Here, the record demonstrates Mr. Wiley's transparency rather than deception. Mr. Wiley has always presented the actual

facts to the Courts, and has never attempted to hide any of the details related to this matter. Alternatively, Mr. Olson, the Debtor, has perpetrated a massive fraud on Mr. Wiley, and is now attempting through his numerous court actions to avoid any responsibility for his actions, and to discharge all liabilities which are subject to his fraudulent criminal activities and conduct.

Mr. Wiley's transparent conduct stands in stark contrast to cases where courts apply judicial estoppel. In *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996), this Court emphasized that judicial estoppel requires "intentional self-contradiction... used as a means of obtaining unfair advantage." There is no, and has been no intentional self-contradiction conducted by Mr. Wiley. Mr. Wiley's actions, conduct and reliance have always been properly presented to the court.

### 3. No Prejudice To The Judicial System Occurred

The Bankruptcy Court found, and the District Court affirmed, that Mr. Wiley had legitimate grounds for valuing McGrath Technical at $1.00:

- McGrath Technical's balance sheet showed approximately $11,000 in assets against $5.9 million in liabilities (A12; Trial Tr. at 46-47);

- Even if the default judgment was fully collectible, McGrath Technical's value would remain negative by millions of dollars (A12; Trial Tr. at 48);

- Centric Bank, McGrath's primary creditor and a sophisticated commercial lender, had already deemed the default judgment uncollectible (A12; Trial Tr. at 47, 64);

- Appellee Wiley himself consistently testified, both in his own bankruptcy and in the adversary proceeding, that he doubts the Judgment's collectability (A12; Trial Tr. at 47-48, 53);

As *Montrose* explained, judicial estoppel "is tailored to address the harm identified," and here, no harm to judicial integrity occurred. 243 F.3d at 779. The above credibility determinations made by the Bankruptcy Court are reviewed only for clear error.

In *In re Kane*, the Court noted that "the Trustee concluded: 'For the record, I'm satisfied that the Debtor's disclosure was sufficient, that there are certain omissions that she might have made, they're negligible.'" 628 F.3d at 635. Similarly, Appellee Mr. Wiley's valuation of McGrath Technical reflected the legitimate business judgment, and was not an attempted manipulation of the judicial system.

Moreover, the timing which Appellant Olson emphasizes actually undermines his position. Mr. Wiley's 2020 Chapter 7 bankruptcy filing occurred after McGrath Technical had failed, after Mr. Olson's fraud was discovered, and after the Judgment had been entered. Mr. Wiley's valuation of McGrath Technical at $1.00 reflected that company's status as a defunct entity with massive liabilities. The partial cause of the company's demise was Appellant Olson's fraud, which caused actionable damages. The Bankruptcy Court properly recognized this distinction between valuing McGrath Technical's net worth at the time of Mr. Wiley's bankruptcy, against Mr. Wiley's subsequent actions in this matter from preventing the Judgment from being discharged due to Mr. Olson's fraud.

## VII. CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's judgment. Both issues raised by Appellant were correctly decided based on controlling Supreme Court precedent and by well-supported factual findings. First, the Premium Payment is nondischargeable under *Cohen v. de la Cruz* because it represents debt arising from Appellant Olson's fraud. The Bankruptcy Code prioritizes protecting fraud victims over providing fresh starts to those whose debts arise from fraud. Second, judicial estoppel does not apply because Appellee Wiley's position in valuing McGrath Technical at $1.00 due to it having millions of

dollars of debt but only minimal assets, and then seeking to prevent the Judgment (which may be uncollectable and which does not provide a positive valuation for the defunct company) from being discharged in Appellant Olson's bankruptcy were not inconsistent actions. Mr. Wiley has acted transparently throughout the proceedings. This Court should not allow Appellant Olson to turn the Bankruptcy Code into an engine for fraud by escaping liability for the full consequences of his criminal conduct. No substantial question is presented by Mr. Olson's appeal.

Respectfully submitted,
**BERGER LAW GROUP, P.C.**

By: *Phillip D. Berger*
Phillip D. Berger, Esq.
Attorney I.D. No. 58942
Matthew R. Kaufmann, Esq.
Attorney I.D. No. 206991
919 Conestoga Road
Building 3, Suite 100
Bryn Mawr, PA 19010
(610) 668-0774
DATED:     July 31, 2025          Attorneys for Plaintiff/Appellee

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,962 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

The hard copy and the electronic copy of this brief are identical.

The electronic copy of this brief has been virus scanned using Microsoft Defender Antivirus and no virus was detected.

By: _Phillip D. Berger_
Phillip D. Berger, Esquire


## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

By: _Phillip D. Berger_
Phillip D. Berger, Esquire

# CERTIFICATION OF COMPLIANCE – PUBLIC ACCESS

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated: July 31, 2025

*Phillip D. Berger*

Phillip D. Berger, Esquire
Attorney I.D. No. 58942
Matthew R. Kaufmann, Esq.
Attorney I.D. No. 206991
BERGER LAW GROUP, P.C.
919 Conestoga Road
Building 3, Suite 100
Bryn Mawr, PA 19010
(610) 668-0774
(610) 668-2800
Attorneys for Plaintiff/Appellee

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of

Appellee was served on this 31st day of July, 2025, upon counsel of record via the

Court's ECF filing system.


Dated: July 31, 2025

*Phillip D. Berger*

Phillip D. Berger, Esquire
Attorney I.D. No. 58942
Matthew R. Kaufmann, Esq.
Attorney I.D. No. 206991
BERGER LAW GROUP, P.C.
919 Conestoga Road
Building 3, Suite 100
Bryn Mawr, PA 19010
(610) 668-0774
(610) 668-2800
Attorneys for Plaintiff/Appellee